# ROBINSON v. STATE.

## (No. 609.)

CRIMINAL LAW—ABSENT WITNESS—CONTINUANCE—CHANGE OF COUNSEL DURING TRIAL—RIGHT TO DELAY—COURT'S DISCRETION—LARCENY—POSSESSION OF RECENTLY STOLEN PROPERTY—INSTRUCTIONS—REASONABLE DOUBT—PERMITTING JURY TO VIEW PLACE WHERE STOLEN PROPERTY WAS DISCOVERED.

1. A defendant in a criminal case is not entitled to a continuance on the ground of the absence of a witness residing in another state, whose verbal promise to attend the trial had alone been relied on by the defendant, where no subpoena for the witness had been issued, and no attempt made to take the evidence of the witness by deposition.

2. After a criminal case had been set for trial with defendant's consent, and while the jury was being impaneled, the defendant discharged her attorney and engaged another, and thereupon applied for continuance on the ground of the absence of a witness residing in another state, alleging the neglect of former counsel in failing to procure a subpoena for, or the deposition of, such witness. *Held,* that the failure of counsel to take ·the necessary steps to procure the evidence of the witness did not entitle the defendant to the continuance asked for, it not appearing that she had fully and fairly stated to her counsel what she expected to prove by, nor the name of, the alleged absent witness, or that said counsel knew of such witness.

3. Unless it affirmatively appears that the trial court abused its discretion in denying defendant's motion for continuance on account of the absence of a witness, a conviction in a criminal case will not be disturbed on the ground of such ruling.

4. After a criminal case had been set for trial with defendant's consent, and the jury was being impaneled, the defendant discharged the counsel, who, by her own choosing, had up to that time represented her, and employed new counsel. *Held,* that the defendant was not entitled as of right, at that stage of the proceedings, to delay the trial so as to allow the new counsel to become familiar with the case and prepare for a defense, it not appearing that she had been misled or prejudiced by unprofessional conduct of her former counsel.

5. Evidence of possession by a defendant of property alleged to have been recently stolen is not admissible to prove the fact of the larceny, but to identify the guilty party.

6. An instruction in a larceny case to the effect that the jury may consider the fact, if proven, that the property alleged to have been stolen was found in the possession of the defendant, as tending to show the larceny, is erroneous, but it may not be prejudicial where the evidence is sufficient to show that the property was stolen, independent of the question of recent possession.

7. An instruction in a larceny case that if it be found that the property alleged to have been stolen was discovered by an officer in a room in defendant's house, and that it had been secreted there during an interval when no person or persons, except the defendant and the officer, had access to or were in such room, then such facts may be considered as tending to show the larceny, and that the property was stolen by defendant, and was in her possession when discovered, *held* to be erroneous and prejudicial, because ignoring the explanation of the defendant with reference to her connection with the property, and the secreting thereof, and also because its effect is to make the mere fact of defendant's possession, even though explained, a matter to be considered as tending to show guilt; the defendant having testified concerning her conduct at the time of the search, that she did not place the property where it was found, and that she did not have possession of it.

8. The following, in an instruction explaining reasonable doubt: "You are not at liberty to disbelieve as jurors if you believe as men; your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered," is erroneous, for, even if it might be otherwise proper, it omits the element that belief in the guilt of an accused sufficient to convict must be based upon the evidence in the case, and a lack of evidence to prove such guilt cannot be supplied by what a juror knows or believes regardless of his oath.

9. Prejudicial error was not committed in permitting the jury in a larceny case to view the room in defendant's house where the stolen property was claimed by the prosecution to have been found, the view having been ordered at defendant's request, the jury being in charge of sworn bailiffs, and it not appearing that the instructions of the court concerning the conduct of the jury in that respect,

which were not objected to by defendant, had been substantially departed from.

[Decided January 10, 1910.]                    (106 Pac. 24.)

Error to the District Court, Natrona County, Hon. Charles E. Carpenter, Judge.

The facts are stated in the opinion.

*M. C. Brown,* for plaintiff in error.

When error has been committed on the trial of a cause, the trial court should, without hesitation, grant a new trial unless the error has been corrected in a clear and positive manner. A motion for a new trial is addressed in some degree to the discretion of the trial court, but it is the duty of the court to examine the entire proceedings leading up to the verdict, and consider in connection with them any new facts and reasons, if any, that may be presented, and order a new trial if it is deemed that injustice has been done. A like duty rests upon the appellate court, but in a lesser degree for many reasons, such as the fact that the trial court has seen and observed the witnesses, the methods of counsel, the attitude of witnesses, whether fair or hostile, and other matters occurring on the trial. How can a judicial mind be satisfied with a verdict in a criminal case, which, after giving the opinion of the jury all due weight, creates still the distinct and not unreasonable apprehension that a great wrong might have been done, though there be no absolute showing that it has been, alike to both parties to the controversy? (1 Bish. Cr. Proc., (3rd Ed.) Secs. 1278, 1275, 1273, 1092.) Our Penal Code is required by the Constitution to be framed on the humane principles of reformation and prevention. (Const., Art. I, Sec. 15.) We take this to mean that the administration and the enforcement of law by the courts should be along like lines.

Upon the evidence it must be exceedingly doubtful whether defendant was ever in possession of the stolen property, and such possession is the only fact in the case

tending to incriminate her. Can it be said, therefore, that it is sufficient to sustain the verdict? Possession of recently stolen property is not alone sufficient to sustain a conviction. The State is not interested in a conviction by improper or unfair means, and if a conviction is so obtained it is reversible error. (People v. Lu Chuck, 78 Cal. 317.) It is the duty of a prosecutor to exercise absolute impartiality and to see that defendants are convicted only by competent evidence; so is it the duty of the court to give the defendant the fullest latitude to procure all evidence reasonably competent to make his innocence appear. And officers interested in bringing criminals to justice should not prostitute their high office in order, by unjust and unfair means, to secure convictions. (State v. Irwin, (Ida.) 31 Pac. 608; People v. Carr, 64 Mich. 702, 59 Mich. 550; People v. Derbert, 138 Cal. 467.) A detective's testimony is to be received with caution; or as it is some times said, with extreme care or distrust. (State v. Snyder, (Kan. App.) 57 Pac. 135; State v. Keys, 45 Pac. 727; State v. Fullerton, 90 Mo. App. 411; State v. Hoxie, 15 R. I. 1; State v. Bennett, 40 S. C. 308.)

The instructions upon reasonable doubt, giving as they do all the extreme definitions found in judicial decisions gathered together, have more the appearance of an argument than a definition. (King v. State, (Tex.) 56 S. W. 26.) Any instruction tending to relieve the jury of the binding force of their oath is a violation of the statute requiring the jury to be sworn. The Spies case, from which the objectionable part of instruction number 6 was taken, was an extreme case, and given under conditions which seemed to require instructions stretched to the utmost; but they should not be followed in ordinary cases and cannot be accepted with safety. The instruction complained of has been condemned in several cases. (People v. Johnson, 140 N. Y. 350; Siberry v. State, 133 Ind. 677; Cross v. State, 132 Ind. 65.) The instruction in question omits the element contained in the instruction in the Spies case that the belief of the jury is to be based

upon the evidence in the case. At the best the instruction is misleading. It undertakes to tell the jury what their conduct must be as jurors, and how and in what manner they shall believe or disbelieve. It is in no sense a definition of reasonable doubt. (Lovett v. State, (Fla.) 17 L. R. A. 709.) Argumentative instructions are generally reversible error. (Willis v. State, 134 Ala. 429; Boling v. State, 54 Ark. 588; Thomas v. State, 95 Ga. 484.)

The instructions with reference to possession of recently stolen property were erroneous. The evidence did not show nor tend to show that defendant had possession of the stolen property. They are based wholly on the testimony of the Sheriff, the chief witness for the prosecution, and who is shown by his own testimony to have been a prejudiced witness—a detective. The court told the jury what inferences they must draw from certain facts. This was error, for it was the duty of the jury to draw their own inferences. (Wilkerson v. State, 106 Ala. 23; Esterling v. State, 30 Ala. 46; People v. Camillo, 54 Cal. 63; Allison v. State, 42 Ind. 354; Comm. v. Clifford, 145 Mass. 97.) The presumption arising from the possession of recently stolen property is used to identify the thief, not to prove the theft. (2 Bish. Cr. Proc. (3rd Ed.) Sec. 739.) It is believed to be error for the court to call attention to particular facts and lay stress upon them. (Roberts v. State, 11 Wyo. 66; Gustavenson v. State, 10 Wyo. 301.) It being clearly shown that defendant could not have stolen the property, the only inference to be drawn from unexplained possession was to indicate possibly that the defendant was guilty of knowingly receiving it. It was therefore error for the court to instruct as it did upon the question of possession. Further, the instructions go to the effect that possession tended to show the larceny of the property and that it was stolen by the defendant, which is clearly erroneous.

While it is not error to refuse the jury the right to view the place, etc. when the court directs it to be done the object most generally understood is to enable the jury

to more clearly comprehend by the aid of visible objects, the evidence already received. But it is some times said that it is done to supply evidence. (People v. Fitzgerald, 137 Cal. 546; Shuler v. State, 105 Ind. 289; State v. Adams, 20 Kan. 311; Chute v. State, 19 Minn. 271; Sasse v. State, 68 Wis. 530; Benton v. State, 30 Ark. 328; State v. Bertin, 24 La. Ann. 46; State v. Henny, 51 W. Va. 283.) However, the order for the view and inspection was made by the court and neither party objected. The only question about the matter is the object and purpose of the view. Under the circumstances a view of the place where the property was found could not be of any benefit to the jury unless the occurrences at the time of the search were repeated. The view which was made, therefore, was prejudicial to the defendant. (State v. Knapp, 45 N. H. 148.) Prejudice to the defendant is to be presumed from error in the instructions given. (People v. Marshall, 112 Cal. 422; Farnham v. U. S., 1 Colo. 309; State v. Gannon, 75 Conn. 206; Lane v. State, 32 So. 896; Wood v. State, 31 Fla. 221; State v. Johnson, 69 Ia. 623; Barnett v. Comm., 84 Ky. 449; Josephim v. State, 39 Miss. 613; Cuny v. State, 4 Neb. 545; People v. Gonzales, 35 N. Y. 49.) Where one of two inconsistent clauses is erroneous it is presumed that the jury follows the erroneous charge. (State v. Ferguson, 9 Nev. 105; People v. Berlin, 10 Utah, 39.)

It was error for the court to refuse the application for a continuance. Assistance of counsel for all persons accused of crime is a constitutional right. If counsel is deprived of sufficient time to prepare for trial a defendant is thereby deprived of counsel. (Dunn v. People, 109 Ill. 635; Kennedy v. State, 81 Ind. 379; Lindville v. State, 3 Ind. 580; State v. Poole, 50 La. Ann. 449; State v. Boyd, 37 La. Ann. 781; State v. Wilson, 33 La. Ann. 261; State v. Baptiste, 26 La. Ann. 134; Comm. v. Winnemore, (Penn.) 2 Brewst. 378; State v. Briggs, (S. C.) 1 Brew. 8; State v. Lewis, (S. C.) 1 Bay, 1; King v. State, (Tex. Cr.) 56 S. W. 920; Lockwood v.

State, (Tex. Cr.) 22 S. W. 413; People v. Winthrop, 118 Cal. 85; Fletcher v. State, (Tex. Cr.) 39 S. W. 116; Butler v. State, 38 S. W. 787; People v. Colton, 5 Utah 451.) An accused has a right to a reasonable time in which to prepare for trial. (Const. Art. I, Sec. 10.) An accused, to have assistance of counsel, must have sufficient time for her counsel to prepare for trial. (State v. Pool, (La.) 23 So. 503; State v. Simpson, 38 La. Ann. 23; State v. Lewis, 74 Mo. 222.) A new trial will be granted if a reasonable time, according to the circumstances of the case, has not been allowed. (Jones v. State, 115 Ga. 814; Hunt v. State, 102 Ga. 569.) The denial of any time whatever is clearly reversible error. (12 Cyc. 503.)

It is error for a court to refuse to strike out incompetent or irrelevant testimony, though it has been admitted without objection. (Coppin v. State, 123 Ala. 58; Wright v. State, 108 Ala. 60; People v. Ardell, 66 Pac. 970; People v. Johnson, 106 Cal. 289; People v. Johnson, 106 Cal. 289; State v. Moats, 108 Ia. 13; State v. Marshall, 105 Ia. 38; Lane v. State, 151 Ind. 511; State v. Rowfischet, 12 La. Ann. 382; Goldman v. State, 75 Maryland, 621; Brown v. State, 72 Miss. 95; Dick v. State, 30 Miss. 95; State v. McAfee, 148 Mo. 370; State v. Rapp, 142 Mo. 443; State v. Marks, 140 Mo. 656; State v. Arnewine, 36 Mo. 130; People v. Harris, 136 N. Y. 423; Stephens, 4 Park. Cr. 396; Com. v. Valsalka, 181 Pa. St. 17; Gonzales v. State, 30 Tex. App. 203.) To test the reliability of a witness and the weight to be given his testimony, his character may be inquired into on cross-examination, and so as to any facts respecting his relations to parties interested that may show bias or prejudice, and even collateral facts may be introduced to show that they are material to main facts. (State v. Ernst, 70 Mo. 520; People v. Ernst, 70 N. Y. 393; Real v. People, 42 N. Y. 270.) A new trial should be granted a defendant if he has been deprived of some substantial right in the trial court, or if, without his fault, he has not

had a full, fair and legal trial. (Trulock v. State, 1 Ia. 515; State v. Shafer, 22 Mont. 17; 39 Mich. 908.)

*W. E. Mullen*, Attorney General, and *John B. Barnes, Jr.*, County Attorney, for the state.

While it is true that there should not be undue zeal in criminal prosecutions which might cause the conviction of innocent persons, there is nothing in the case at bar to show that anyone interested in the prosecution went further than his duty required. It is certainly not improper for sheriffs and police officers to search for stolen property. Larceny is seldom committed in the presence of witnesses, and in most instances the proof of guilt must be of a circumstantial character. The case at bar admits of but one conclusion, and that is the guilt of defendant. Where there is material evidence tending to prove guilt, and the trial court refuses to set aside the verdict, this court will not reverse the action of both court and jury, whatever may be its own view of the weight and preponderance of the evidence. (Cornish v. Terr., 3 Wyo. 100.) Instructions defining reasonable doubt will probably continue to be a mere weapon of defense in courts of review, and there seems to be a growing tendency on the part of the courts to question the practical value of any attempted definition of the term. Instruction number 5 was not excepted to by the defendant, and its form seems to have been approved by this court in Palmerston v. Territory, 3 Wyo. 333. The entire trend of instruction number 6, which is objected to as being argumentative, is to direct a perfectly just and natural consideration of the evidence. In criminal trials juries are constantly reminded that they are under oath. The instruction simply assures them that, notwithstanding their oaths, they are not required to retain distorted or unnatural views, but on the contrary they are expected to retain and use whatever sense and judgment they would naturally use upon passing upon the evidence. Even an erroneous instruction may not be prejudicial when taken in connection with

the evidence and the rest of the charge. (Roberts v. State, 11 Wyo. 66.) The 6th instruction seems to have the support of the decided weight of authority upon the subject. The instructions with reference to the possession of the stolen property do not invade the province of the jury. Nor was there any error in allowing the jury to view the place where the property was found. The motion for continuance was properly denied, in view of the fact that trial had commenced before the change of counsel. The attempt to cast suspicion upon the testimony of the Sheriff is not called for or supported by the evidence or the conduct of that officer. No objection was made to any testimony on the ground that the Sheriff acted as a detective, and no instruction was requested in that behalf. Defendant therefore cannot complain on that ground. (Wyman v. Quayle, 9 Wyo. 326; Koppala v. State, 15 Wyo. 398.) This court does not pass upon the character or credibility of witnesses. (Tregea v. Mills, 11 Wyo. 438.) There being sufficient evidence to sustain the verdict it should be allowed to stand. (Long v. State, 15 Wyo. 262; Horn v. State, 12 Wyo. 80; Ass'n v. Laramie, 10 Wyo. 54; Bryant v. State, 7 Wyo. 311; Smith Merc. Co. v. Conway, 6 Wyo. 468; Edwards v. Murray, 5 Wyo. 150; Starke v. State, (Wyo.) 96 Pac. 148.) The 6th instruction fairly states a definition of reasonable doubt, and does not tend to relieve the jurors of the obligation of their oaths. (State v. Potts, (Nev.) 22 Pac. 754; Willis v. State, 43 Neb. 102, 61 N. W. 254; People v. Worden, 113 Cal. 569; Blashfield Inst. to Juries, Sec. 304; Perry v. People, (Colo.) 87 Pac. 796.) The instruction relative to possession of recently stolen property correctly states the law. (Roberts v. State, 11 Wyo. 66; Terr. v. Caldwell, 98 Pac. 167; Palmer v. State, 70 Neb. 136; Smith v. State, 103 Ala. 40; Sahlinger v. People, 102 Ill. 241; Fowle v. State, 47 Wis. 545; State v. Pennyman, 68 Ia. 216; Johnson v. Miller, 29 N. W. 743; Smith v. State, 58 Ind. 340; Watkins v. State, 2 Tex. App. 73.) Where no objection was made to an instruction error can-

not be predicated upon it. (Gustavensen v. State, 10 Wyo. 302; Long v. State, 15 Wyo. 262; Ross v. State, 8 Wyo. 351.)

The defendant was not entitled to a continuance on account of the absence of the witness named in. the motion, since no effort had been made to obtain the presence of the absent witness, or to take her deposition. It was in the discretion of the court to grant or deny the motion. (Keffer v. State, 12 Wyo. 5; State v. Phillips, 98 N. W. 171; State v. Hedger, 2 Kan. 26; Burrell v. State, 25 Neb. 581; Hicks v. State, 6 Fla. 441; Solander v. People, 2 Cal. 48; Boyle v. People, 4 Colo. 176; State v. Lewis, 56 Kan. 374; State v. Hutchinson, 14 Wash. 580.) The right of defendant to be represented by counsel cannot be so distorted as to allow an accused who has been continually represented by counsel of her own selection to change counsel without notice or excuse after the trial has commenced, and thus say that there has been no opportunity for counsel to prepare for trial. If accused persons are allowed to change counsel after a case has proceeded to trial, and for that reason obtain a continuance as a matter of right, criminal causes may never be brought to trial or the ends of justice obtained. (State v. Chase, (N. Dak.) 117 N. W. 537; Johnson v. State, 97 Pac. 1059.) While under some circumstances it is held that a witness may be cross-examined as to his character in order to test his credibility, any evidence as to what a third party did was wholly incompetent and immaterial and was not proper to test the credibility of the Sheriff as a witness. Insinuating and suggestive questions are improper. (State v. Pancost, 5 N. Dak. 516.) Alleged irregularities during the trial not appearing in the record other than by recitals in the motion for new trial cannot be considered on error. (Wallace v. Skinner, 15 Wyo. 233.) Misconduct of counsel in arguments to the jury is not, as a rule, ground for reversal, unless proper objection was made at the time. (Horn v. State, 12 Wyo. 80.) An application for a new trial is addressed to the

sound discretion of the court and should not be disturbed
on error unless an abuse of discretion appears. (Harden
v. Card, 15 Wyo. 217.)    Errors that are complained of
but not discussed in the brief are to be deemed abandoned.
(Riordan v. Horton, 16 Wyo. 363.)

SCOTT, JUSTICE.

Elizabeth Robinson was charged, tried and found guilty
of the crime of grand larceny and sentenced to serve a
term of years in the penitentiary, and brings the case here
on error.    The subject of the larceny is alleged to be a
seal skin coat.

1.    When the case was called for trial, defendant,
through her attorney, C. O. Brown, announced herself
ready for trial.    The impaneling of the jury was pro-
ceeded with and after the jury was partially called M. C.
Brown, Esq., attorney for plaintiff in error here, appeared
in that court and moved the court for a continuance, saying
to the court that he had just been retained in the case
for the defense, that he was not familiar with the facts
in the case, that he desired a little time within which to
prepare the case for the defense, and that he would prepare
a motion for continuance on the ground of an absent
witness.    At the same time, in open court, the defendant
informed C. O. Brown that his services were no longer
needed.    As soon as prepared the affidavit in support of
the motion on the ground of an absent witness was sub-
mitted to the court.    The court thereupon overruled the
motion.

From the affidavit it appears that the witness whose
testimony was sought was then and for some time prior
thereto had been living out of the State, but had verbally
promised to return at the time of the trial, and that de-
fendant had relied upon such promise, and that the wit-
ness had failed to report at that time.    It is conceded
that no subpoena had been issued nor was any attempt
made to obtain the evidence of this witness by deposition.
Upon this statement standing alone the authority in sup-

port of the ruling is found in Keffer v. State, 12 Wyo. 49, where it is stated that a party cannot complain of such a ruling who shows a lack or want of diligence in preparing for his or her defense.

It is further urged that by neglect and fault of her attorney it was necessary for her to change attorneys at the time she did. It nowhere appears in the record that defendant had fully and fairly stated what she expected to prove by nor the name of the alleged absent witness to C. O. Brown, the attorney whom she discharged, or that he knew of such absent witness or that with such knowledge he neglected and failed to issue a subpoena or procure her deposition. At least without such a showing, after a party has consented to the case being set for trial and upon the arrival of that time announced herself as ready, and the jury is being called, we doubt the wisdom of granting such a motion. If such a practice be encouraged there would be no end to delays in this class of cases where a continuance without merit is often a very great advantage to and eagerly sought by the defendant in a criminal case. The question was one for the court, and if it did not abuse its discretion error could not be predicated upon the ruling, and it does not affirmatively appear that the court abused its discretion in this matter. Nor was it a denial of her constitutional right of benefit of counsel. The record shows that she was at all times represented by counsel of her own choosing, and unless misled or prejudiced in her right by unprofessional conduct of her counsel, which fact should clearly appear, she is not entitled as of right at such a stage of the proceedings to delay the court by allowing time to a new attorney to familiarize himself with the case and prepare for a defense. Upon the record the court did not abuse its discretion nor deny her any constitutional right in overruling her motion.

2. It is assigned as error that the evidence is insufficient to support the verdict. There is no direct evidence of asportation by the defendant of the property alleged

to have been stolen. Gardner, the prosecuting witness, was one of the inmates of a house of ill fame conducted by the defendant. The evidence tended to show that defendant was ill and confined to her room in the same house on the afternoon and evening of March 10, 1907, the time when the prosecuting witness testified that her coat must have been taken from her room. No one saw the defendant go into or come out of the Gardner room on that day.

The only identifying or criminating evidence aside from defendant's occupancy together with others of the house, and who together with the frequenters had equal opportunity to steal the coat, is that of Sheffner, the Sheriff, and his deputy, as to the defendant's conduct, what she said, and what occurred when he made a final search of the house. Indeed, up to this time the evidence does not point to her as the thief any more than it does to any other occupant or frequenter of the house. She knew, in common with the other inmates of the house, from the time when such claim was first made on March 11th preceding, that the prosecuting witness then and had since claimed that her coat had been stolen. The evidence tends to show that the Sheriff had made a partial search of the house on March 12th, and a more thorough search on April 7th, following. On the latter date he first searched the beer room and then the linen closet, and failed to find the coat; shortly thereafter, upon a further search of the beer room, he found the coat in a bundle enclosed in a sack or pillow case under the ice box, and when he announced to the defendant that he had found, and where he had found, the coat, she immediately exclaimed: "Why some of the girls must have placed it there." The beer room and linen closet had a common partition, but no door connecting them. Both opened into a sitting room, so that in going from the beer room to the linen closet one would have to pass out into the sitting room and thence into the linen closet and *vice versa*. The Sheriff's deputy, who testified as a witness, sat in the sitting room so he

could see any one going in or coming out of either of these rooms from the time he and the Sheriff went into the house for the purpose of serving the warrant until the coat was found. We think this evidence, in connection with other evidence referred to in paragraph 3 of this opinion, was sufficient to support the verdict.

3. The following instructions were given to the jury over the objection of the defendant, viz:

"10½. The court instructs the jury that, if they find, from the evidence, that the defendant was in the possession of the property in question, and that the same was stolen, that the unexplained possession of recently stolen property is a circumstance to be considered by the jury, and such circumstances may be considered by you, in arriving at your verdict, as tending to show the larceny of the property and that it was stolen by the defendant."

"11. The jury are instructed that if you find from all of the evidence in this case that the coat alleged to have been stolen was found secreted under the ice box in the beer room of the house called Cap and Ball, and that said coat was so secreted in said beer room between the time that witness, Sheffner, made the first search of said beer room and the time it was so found therein; and if you find that during said interval between said search by witness, Sheffner, and when it was found by him no person or persons had access to or were in said beer room except the defendant, Lizzie Robinson, and the witness, Sheffner, then said facts and circumstances may be considered by you, in arriving at your verdict, as tending to show the larceny of the property and that it was stolen by the defendant and that it was in her possession when found."

There is no evidence in the record that the defendant ever claimed or asserted ownership of the coat or was seen in its actual possession. The evidence of the defendant and three other witnesses is practically uncontradicted that the defendant was sick and unable to leave her room on the day that the coat is alleged to have been

stolen. The prosecuting witness testifies that it was taken from her room during the afternoon of that day. It was not found by the Sheriff for nearly a month thereafter.

It was the theory of the prosecution that defendant secreted the coat under the ice box in the beer room between the first and third search of that room made by the Sheriff on April 7 following the alleged larceny. He testified that he made three searches of the beer room, each, except the second, being thorough, and he did not discover or find the coat until the third search. The evidence shows that other inmates of the house had access at all times to the beer room except during the time the search was going on, and while the entire house was in the possession of the defendant the least that can be said is that access to this room was permissive to the other occupants for certain purposes and exercised by all the inmates of the house. These instructions, however, purport to be based upon and to be authorized by the proof that when the search warrant was served no person or persons had access to or were in the beer room during the time when the searches were being made except the defendant and the Sheriff; that she went into the beer room during the interval between the second and third search, and that the Sheriff followed her a minute and a half after she entered, and upon making a search at this time found the coat under the ice box. Conceding that the evidence shows that fact it does not of itself prove the larceny— at most it would prove possession of the coat. Upon a charge of larceny, evidence of possession of goods shown to have been recently stolen is not admissible for the purpose of proving the *corpus delicti* or the fact that the goods have been stolen. Such possession is not shown to prove the theft but to identify the thief. (Sec. 740, 2 Bish. New Cr. Proc.) Instruction 10½ was erroneous, for by the latter part of it the jury were told that they might consider such possession as tending to show the larceny of the property; and this also applies to the eleventh instruction. Inasmuch, however, as there is no dispute in

the evidence that the coat had been stolen, and the evidence being sufficient upon that question independent of the question of recent possession, we think it at least doubtful whether upon the record here presented the giving of the instruction was prejudicial in that respect.

Instruction number 11 goes a step beyond instruction 10½, for while the latter is intended to state the effect of the unexplained possession of recently stolen property, the object of the former is to state the effect, as proof that the defendant had possession of the stolen property, of certain facts which might be deducible from the evidence in the case, but without stating that the facts mentioned if found by the jury would tend to prove that the defendant had possession, the instruction states that the facts could be considered as tending to prove the defendant's guilt of larceny without repeating the usual qualification that "unexplained" possession may be considered as tending to show guilt. Further than that, the instruction totally ignores the explanation given by the defendant in her testimony of her conduct at the time of the search and her denial that she placed the coat where it was found or that she had possession of it. By analogy to the requirement in the case of an instruction as to the effect of possession of recently stolen property it would seem that an instruction such as number 11 should be qualified by some reference to the defendant's explanation. It would seem clear that conceding that the facts mentioned in the instruction if found by the jury would, standing alone, tend to prove the defendant's possession, and if the latter was unexplained, tend to prove her guilt, such tendency would be overcome by a satisfactory explanation on the part of the defendant inconsistent with her possession or guilt. If the jury should believe the testimony of the defendant that she did not place the coat where it was found, then it would not be true that the facts mentioned in the instruction would tend to prove that she had been in possession of the coat, for the facts leading to such a conclusion would then be entirely overcome by the defendant's

satisfactory explanation of her conduct and her relation to the property alleged to have been stolen. We think, therefore, that the instruction was erroneous and was highly prejudicial because ignoring the explanation of the defendant with reference to her connection with the coat and the secreting thereof, and also because its effect is to make the mere fact of her possession, even though explained, a matter to be considered as tending to show her guilt.

Instruction 10½ is perhaps also objectionable because the rule as to unexplained possession of recently stolen property was given to the jury to be applied in case they should find the defendant to have been in possession, and thus possibly intimating that there had been no sufficient explanation of possession.

4. The court, over the objection of the defendant, gave the following instruction, viz:

"Instruction No. 6. The court instructs the jury, as a matter of law, that the doubt which the juror is allowed to retain in his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of the juror, in view of the consequence of his verdict, is not a reasonable doubt; and a juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to a possible state of facts differing from that established by the evidence; you are not at liberty to disbelieve as jurors if you believe as men; your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered."

No objection was made to the giving of instruction number five, which purports to define a reasonable doubt, but it is contended that another instruction which the court gave to the jury to the effect that the instructions should not be considered separately and alone but together and in the light of each other, that instructions 5 and 6, when so considered, modified each other and gave to the jury

a wrong definition of what constitutes reasonable doubt. Instruction number 6, as above set out, is evidently an attempt to follow the language of the instruction given and approved in Spies v. People, 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 324. An instruction in almost the exact language used in that case has been approved in Barney v. State, 49 Neb. 515, 68 N. W. 636; Bartley v. State, 53 Neb. 30, 73 N. W. 744, 759; Willis v. State, 43 Neb. 102, 61 N. W. 254; Davis v. State, 51 Neb. 301, 70 N. W. 384; Nevling v. Com., 98 Pa. St. 332. It has also been condemned upon the ground that it in effect relieves the jury from the obligation of their oaths. People v. Johnson, 140 N. Y. 350, 35 N. E. 604; Siberry v. State, 133 Ind. 677, 33 N. E. 681; Cross v. State, 132 Ind. 65, 31 N. E. 473. It will, however, be observed that in the instruction in the case before us the court said to the jury: "You are not at liberty to disbelieve as jurors if you believe as men; your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered." In the Spies case the language was: "You are not at liberty to disbelieve as jurors, *if from the evidence,* you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." Whatever force there may be in the adoption and approval of the instruction as given in the Spies case by eminent courts, it is not persuasive as upholding the instruction given in the case before us. Here one of the essential elements of that instruction is lacking, viz: that the belief in the guilt of the accused sufficient to convict must be based upon the evidence in the case. A lack of evidence to prove such guilt can not be supplied by what a juror knows or believes regardless of his oath. Under our procedure he is required to base his verdict solely upon the evidence and the law as given him by the court. It is not out of place to here observe that in Illinois the instructions to the jury are advisory only and the jury remain

the judges of the law and the facts. (11 Ency. Pl. & Pr., at pages 67 and 68.)

5. During the trial the jury was conducted to the house where the larceny is alleged to have been committed and permitted to view the beer room wherein the Sheriff found the coat. They were put in the charge of sworn bailiffs for that purpose and the manner of the view was indicated by the court to the jury and the officers in charge of them. The view was ordered at the request of the defendant and it does not appear that the instructions of the court in that respect were objected to by the defendant or that such instructions were departed from in any substantial manner.

6. Other errors are assigned, but in view of the fact that the judgment must be reversed and a new trial granted for error in giving the instructions Nos. 6 and 11, already referred to, we deem it unnecessary to discuss them.

The judgment will be reversed and the cause remanded for a new trial.                                    *Reversed.*

POTTER, C. J., and BEARD, J., concur.