No. 18,697.

ROBERT DENNIS BACA *v.* PEOPLE OF THE
STATE OF COLORADO.
(336 P. [2d] 712)

Decided March 16, 1959.    Rehearing denied April 6, 1959.

Mr. WALTER L. GERASH, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant,
for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error, defendant in the district court,
seeks reversal of a conviction of burglary and conspiracy
to commit burglary upon which was pronounced a sen-
tence of six to ten years in the State Penitentiary.

Defendant, together with one James Ferguson, was
charged with the burglary of the PFAB Prescription
pharmacy at 5190 West Colfax Avenue in Denver. He
was apprehended inside the store on the morning of
February 11, 1957, at 1:00 A.M. Entry had been gained
by hammering a hole through the wall from an adjoin-
ing building. Brick and mortar dust on the clothing of
the defendant attested to the fact that he had entered
in this manner. Also found at the scene was a small
bag containing articles which had been removed from
the store, and gloves and two hammers which appar-
ently had been used for the purpose of knocking out the
bricks.

When the officers arrested the defendant he was in-
side the store and had been hiding behind a counter.
Lying under this counter, which was normally used for
wrapping packages, on a shelf was a 38 calibre Smith
and Wesson revolver fully loaded. Defendant was ques-
tioned by the arresting officer as to what he had been
doing in the drug store and he said, "What drug store?"
and "I wasn't in any drug store."

Two points are raised by the defendant on this re-
view. They are paraphrased and summarized as fol-
lows:

1. That the trial court erred in refusing to grant a
continuance in view of the fact that a conflict between

the defendant and his attorney arose and was brought to the attention of the trial court. Defendant argues that this ruling was contrary to law and to Article II, Sections 16 and 25 of the Colorado Constitution and to the Fourteenth Amendment, of the Constitution of the United States.

2. That the trial court erred in admitting People's Exhibit C, the pistol. Defendant contends that this exhibit was immaterial and highly inflammatory.

1. *The trial court's denial of the motion for continuance.*

The conflict between the defendant and his counsel arose because of the recommendation of the latter that defendant plead guilty. This occurred on October 31, 1957, the day on which the case had been set for trial. The following transpired:

"MR. BUCKLES: May it please the Court, the defendant's attorney is ready for trial. THE COURT: Mr. Garcia, Mr. Buckles indicated that you wanted to make some statement to the Court. You may do that. THE DEFENDANT: I am not ready for trial. THE COURT: And why is that? THE DEFENDANT: Well, Mr. Buckles and I talked last night to some extent and he feels that I am guilty of the charge, which I am not, and he wants to go to trial; we just couldn't come to an agreement. He wants me to plead guilty and I don't think I should. I have sufficient funds to obtain another counsel, and I think it would be best for me if I did. MR. BUCKLES: May it please the Court, in view of his statement, I would like to make a statement into the record. In this instance I represented the co-defendant named James Franklin Ferguson, Jr. I have become well acquainted with the facts and circumstances surrounding the alleged felony commission, and in view of the overwhelming amount of evidence that I feel that the State is prepared to present and the utter lack of defense which is available to this charge, I have advised the defendant that in my opinion a plea of guilty should be entered.

I have further advised the defendant that I am more than willing to represent him to the limit of my capacities; however, I do not know what type of defense is available to me. Now, that is where I stand, your Honor, and I am perfectly willing to go ahead with the trial. THE COURT: All right. Let me check this record before I rule on your request, Mr. Garcia. I want to review the record briefly. This case was filed in this court on February 13th; it charges an offense occurring on February 10th. These dates are all this year. There were two defendants, Ferguson and Garcia; they were initially arraigned on February 21, at which time each defendant pleaded not guilty; thereafter, motions were heard on the 25th regarding bail; the case was originally set for trial on April 11th. Now, unless I have this case mixed up with some other one, and I think I do not, the defendants were not ready on several occasions for trial because Ferguson, I think it was, was in the hospital. MR. BUCKLES: That is correct, your Honor. THE COURT: On the 11th of April it was set over until the — MR. BUCKLES: Until the 25th, your Honor, for resetting. THE COURT: All right, the 25th of April for resetting. On April 25th it was set over to June 25th for trial or disposition; on June 25th it was set for trial on September 11th, and again we were waiting for Ferguson to get well. Now, September 11th was a hard, fast, firm trial date. I was advised two days prior to the 11th, I think it was, by Mr. Buckles that the defendants and each of them were going to plead guilty. On September 11th Ferguson did plead guilty and Mr. Garcia, as he had a perfect right to do, made a last-minute switch and said he didn't want to plead guilty, he didn't think he was guilty. Mr. Buckles indicated — I thought he went beyond what he had to do — he offered, I believe, to return a substantial part of the fee and to withdraw from the case, but we set it over two weeks to the — we set it over twice: on September 11th we set it over to the 18th of September, from the 18th over to the 30th for

resetting, and it was agreed that Mr. Buckles would stay in the case and represent the defendant. It was set for trial then on this date. Now, Mr. Garcia, I have a delicate decision to make, but I am going to deny your request. I think you are playing fast and loose with the Court and its calendar. You had plenty of time to get other counsel — THE DEFENDANT: No, sir. I didn't have funds before. I told you that before. THE COURT: Here we are again, all the witnesses here, the jury panel ready, and as far as I am concerned the defendant desires another delaying action. For better or for worse, I am denying your request and we are proceeding to trial. The record will contain your statement, Mr. Garcia. I think you are abusing the Court, playing fast and loose with the Court. THE DEFENDANT: No, sir. I don't mean to. THE COURT: You are entitled to your view, and I believe that I am entitled to mine, and that is mine. MR. BUCKLES: Your Honor, for the record I would like to state that I shall do my utmost in his defense, and I have no personal animosity toward the defendant. I am in a fairly delicate position, I think, in this matter."

▉ The granting or denial of a motion for a continuance is a matter resting within the sound discretion of the trial court, and a ruling thereon will not be disturbed absent a showing of abuse of that discretion. *Harris v. Municipal Court,* 123 Colo. 539, 234 P. (2d) 1055; *Honda v. People,* 111 Colo. 279, 141 P. (2d) 178. The trial court was here justified in denying the request. The period from February 13, the date of filing, until October 31, 1957, provided defendant ample opportunity to solve the problems with his counsel. It was within the province of the court to deny the requested continuance made on the morning of the trial.

The fact that employed counsel had recommended that defendant change his plea from not guilty to guilty does not provide a ground for such counsel's dismissal on the day of the trial in favor of employed counsel, and does not of itself furnish a ground for continuance.

## 2. *The revolver as evidence.*

It is argued that the court committed error in receiving the revolver in evidence. This is based on the argument that the revolver was not relevant to the issues which were being tried, and on the further ground that it was not shown to have been in the actual possession of the defendant, but was found afterward in the immediate area where the defendant was crouching.

■ The contention that the revolver was not relevant regardless of whether the defendant had possession is not tenable. The revolver has as much relevancy as the burglar tools. These articles are all pertinent to the question whether the defendant had the requisite intent to commit a crime and as bearing on his motive for being in the drug store. It will be recalled that the defendant made no explanation concerning his presence in the store either at the time of his arrest or at the trial. The purpose of the district attorney in introducing this demonstrative evidence was obviously to foreclose argument by the defendant that he was a victim of circumstances. Hence, if the articles were so connected with the defendant that it can be fairly inferred that they were at the time of arrest, or had been immediately prior thereto, in his possession, they were properly received in evidence and the fact that they tend to be inflammatory does not render them inadmissible. *Martinez v. People,* 124 Colo. 170, 235 P. (2d) 810; *Moya v. People,* 88 Colo. 139, 293 Pac. 335.

Wigmore on Evidence, Sec. 238 (3rd Ed.), indicates that the decisions are liberal in approving the reception of this type of evidence. The author states:

"The kinds of conduct which may evidence a design are innumerable in their variety. Any act, which under the circumstances and according to experience as naturally interpreted and applied would indicate a probable design, is relevant and admissible. It is true that the design indicated may be too indefinite to be itself relevant as evidence of an act (ante §106); but this does not

effect the relevancy of the conduct to evidence that design.

"Most evidence of this sort needs no judicial ruling to determine its relevancy, and the precedents deal with only a limited number of the possible uses of such evidence. The discretion of the trial Court should control in all these cases; it is impossible to lay down any general rule that will be definite enough to serve as a solution for each instance; and it is poor policy to attempt in a Supreme Court to pass upon the probative value of each given piece of conduct.

"* * * *The acquisition or possession of instruments, tools, or other means of doing the act,* is admissible as a significant circumstance; the possession signifies a probable design to use; the instruments need not be such as are entirely appropriate, nor such as were actually put to use. * * * *"

Collected in the footnote to this section are numerous decisions illustrating the principle.

See also the very recent decision in *Davis v. People,* 137 Colo. 113, 321 P. (2d) 1108, which recognizes that such articles have probative value when they are found in the possession of the accused *after* the commission of the crime.

3. *Can the possession be circumstantial?*

▮▮▮▮ Where, as here, the defendant is arrested inside a drug store under circumstances which conclusively establish that his entry has been unlawful, articles which are then found on the premises in the possession of defendant, or reasonably attributed to him, and which are foreign to the drug store, are admissible. The court's ruling with respect to the hammers is free from doubt. Its ruling on the admissibility of the gun is less so because its possession by defendant was not conclusively established. The district attorney sought to exclude other possibilities by showing that the proprietor had not left the gun there and that it had not been there when the store was closed. The effect of this was to

warrant the trial judge in concluding that the defendant or his confederate had probably placed it there, especially since defendant was apprehended in the very locale where the gun was found. We hold that error was not committed in admitting the gun in evidence under the circumstances disclosed since possession can be established by circumstantial evidence, 12 C.J.S. 724. This is a procedure, however, which should be pursued with caution and only where the circumstances establishing possession are strong.

The trial judge who was in a better position than is this Court to evaluate the gun's proximity to the defendant considered the question carefully and observed:

"It is not a question completely free from doubt, but my mind is made up after listening to the argument and I am going to receive it. It is part of the facts and circumstances surrounding the entire transaction and I believe it virtually falls into the same category as the sledge hammer and the hammer."

The circumstances establishing possession by defendant of this weapon existed to a reasonable certainty and we hold that the trial judge did not abuse his discretion in so ruling.

In view of the overwhelming evidence in support of the verdict, the district attorney might well have refrained from offering the gun in evidence. It added little to the accumulation of evidence already before the jury.

Accordingly, we are of the opinion that the judgment should be and it is affirmed.