Michial Doyle **ROBERTSON**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17616.

Court of Criminal Appeals of Oklahoma.

Nov. 28, 1972.

Jo Ann Fisher Corrigan, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

Romain S. Mossman, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Michial Doyle Robertson, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Woodward County, Oklahoma for the offense of Injuring and Destroying Public Property; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Warren Phillips testified that on June 4, 1971, he was the Woodward County Treasurer. At approximately 7:15 p. m. he entered the courthouse through the south door and observed water running out of the elevator shaft onto the floor. He went to his office and called the jailer and janitor and a county commissioner. At approximately 7:45, the jailer, the janitor, the county commissioner, and the under sheriff arrived; they got on the elevator and rode up to the jail. There was water all over the hall floor. The under sheriff opened the jail door and a larger amount of water rushed down the hallway. He returned to the lower floor and started checking other offices; there was water in the court clerk's office, the county clerk's office, and the office of the judge's secretary. There was quite a bit of damage done to the records, the rugs, and the equipment in the offices.

Calvin Rutledge testified that on the evening in question he was employed as the under sheriff of Woodward County. He received a call from the police department, and then proceeded to the courthouse. He started down the stairway into the jail, and observed the jailer, Mr. Kelln, turning off the water. He went into the jail and observed water running at least four inches deep over the two cells out into the bull pen. He testified that the defendant was in cell number two by himself. Three other prisoners were in cell number one. He took them from their respective cells and placed them in another cell. He returned to the second floor and put trash cans where water was leaking from the

ceilings. He returned to the jail and inspected the cells; in each cell the commodes were broken from the walls and the showers were turned on. The shower drains had been stopped up with paper and wash cloths.

Aaron Kelln testified that he was employed as the jailer of Woodward County, that he received a call from Mr. Phillips, and that he proceeded to the jail, arriving somewhere around 7:30. He took the elevator to the storage room and turned off the main water valve. He observed water coming from cells one and two. Kelln testified that he had left the jail at approximately 5:00 p. m., and everything was in order at the time he left. He testified on cross-examination that the floor was flooded by the showers, rather than the commodes.

Sheriff Gaston testified that he received a telephone call from the police department and he proceeded to the courthouse. He checked all over the courthouse and he testified as to the damage that he observed.

The defendant testified that he was 22 years old, and that he had lived in and around Woodward all of his life. He testified that he had had some past difficulty with the law enforcement officers and that he spent two years at the Cal Farley's Boys Ranch in Amarillo. In March, 1969, he entered a plea of guilty to burglary, and received a three-year sentence. He served fourteen months and was paroled in May of 1970. Defendant got into some further difficulty and left the state because "I was scared." He was picked up in Phoenix, Arizona and returned to Woodward County in May, 1971. On June 4, 1971, a deputy sheriff observed some writing he had done on the cell wall and told him that "this ends all your visiting privileges," and that they were going to try him for vandalism and give him another year in the county jail. He testified that he felt like he was being persecuted and that he was going back to prison on a charge that he was not guilty of, and that he "just went into a rage." Defendant talked to the boys

in the other cell, and they decided that they were going to have a "rare up." He tore the commode from the wall, turned on his shower, and plugged the drain with toilet paper. The boys in the other cell did the same things. Defendant testified that the flooding was caused by the shower, not the commode. When Under Sheriff Rutledge came to the jail he cursed him, made him take off his clothes, and made him lie down in the water. After cleaning up the water, he and the three other prisoners were made to spend the night locked to the bars or to the bunks by handcuffs.

Leaford Robertson, the defendant's father, testified concerning his childhood illnesses and his problems adjusting to life. Mr. Robertson testified that in his opinion the boy had reached a crossroad and that returning him to prison would be his ruination.

Under Sheriff Rutledge was recalled and testified that after everything was cleaned up the prisoners were locked to their bunks to prevent their tearing the water system out of that cell. He testified that he made the defendant and the other prisoners lie down in the cell because he was in the jail alone at the time, and the outside doors to the jail were open.

■ The first proposition asserts that the court erred in refusing to grant a continuance to allow adequate time to prepare for a trial. The record reflects that the defendant appeared in court, was advised of his rights, and requested time to consult with an attorney. On June 9, 1971, the defendant appeared with his court-appointed attorney and entered a plea of not guilty, waived preliminary hearing, and the matter was set for trial at the next jury term of court. On October 20, 1971, the defendant's court-appointed attorney requested a continuance for a trial which was set for November 1. The cause was continued until January 5, 1972, and on December 22, 1971, the defendant posted an appearance bond and was released from custody. On January 4, 1972, the defendant's retained attorney filed a motion for continuance,

stating that the defendant was released from the state penitentiary on December 21, 1971, and made bond on the following day. He first met the defendant on December 28, and was employed on December 29; because of the New Year holiday, he was unable to properly interview the witnesses and to prepare a defense. The motion was overruled and the trial commenced on January 6, 1972. We have consistently held that motions for continuances are addressed to the trial court's sound discretion, and the ruling thereon will be sustained unless such discretion has been abused. Borrelli v. State, Okl.Cr., 453 P.2d 312. We are of the opinion that the trial court did not abuse its discretion in denying defendant's application for a continuance. Defendant requested and was appointed an attorney on June 9, 1971; the matter was set for trial in November of 1971 and was continued at defendant's request. After posting bond on December 22, 1971, the defendant chose to employ other counsel shortly before trial. We, therefore, find this proposition to be without merit.

■ The second proposition contends that the court erred in refusing to grant a change in venue after news stories and photographs prejudicial to the defendant were published and circulated in the community. The record reflects that the defendant attached two newspaper stories dated June 7, and June 10, 1971 to his application for change of venue. No affidavits were attached thereto, nor does the record reflect any testimony was offered in support of defendant's application. The court clerk's record of empanelment of the jury reflects that no jurors were excused for cause and that the defendant waived his final peremptory challenge. In Capes v. State, Okl.Cr., 450 P.2d 842, we stated in the Second and Third Syllabi:

"2. To warrant change of venue on grounds that fair trial cannot be had in the county it must appear that inhabitants of county have fixed opinion as to guilt of the ac-

cused to the extent that accused cannot have a fair trial by impartial jury.

"3. Mere fact that there has been widespread adverse pretrial publicity about defendant does not, by itself, establish reasonable probability that defendant cannot obtain a fair and impartial jury at criminal trial."

We, therefore, conclude that the trial court did not abuse its discretion in denying defendant's application for a change of venue.

■ The third proposition asserts that the court erred in "failing to direct a verdict of not guilty after the State had failed to prove the allegations set out in the information." Defendant argues that the State's evidence adduced that the damage was caused by the stopping of the drain of the shower rather than the destruction of the commode as alleged in the information. The information reads in part as follows:

"* * * commit the crime of Injuring and Destroying Public Building and Improvements in the manner and form as follows, to-wit: Said defendant, Michial Doyle Robertson, did then and there unlawfully, wilfully, wrongfully, intentionally and feloniously injure and destroy public improvements, to-wit: Woodward County Jail, Basement, First and Second Floors of the Woodward County Courthouse located at 1600 Main Avenue in the City of Woodward, Oklahoma, by breaking and destroying one (1) commode in the said Jail *and* allowing water to escape to the above mentioned premises, thereby damaging and injuring records, carpet, machines, equipment and other improvements, * * *" (Emphasis Added)

We are of the opinion that the court did not err in failing to grant defendant's request for a directed verdict. Defendant was charged with the offense of Injuring and Destroying Public Buildings and Improvements by breaking and destroying one commode and by allowing water to escape to the above-mentioned premises. In Bow-

man v. State, 82 Okl.Cr. 199, 167 P.2d 663, the Court stated:

"If it charges more than one crime in one count, the information would be bad for duplicity, but it is permissible to charge a single crime and set forth different acts which may constitute the manner and way in which the accused allegedly committed the offense."

We, therefore, find this proposition to be without merit.

■ The final proposition contends that the punishment was excessive We are of the opinion that this proposition is well taken. In the interest of justice, the judgment and sentence is modified to a term of five (5) years imprisonment, and as so modified, the judgment and sentence is affirmed.

Modified and affirmed.