UNITED STATES of America, Plaintiff-Appellee,

v.

Donald D. FAULKNER, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

William E. WELLS, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jerry McCLANAHAN, Defendant-Appellant.

Nos. 75-1778, 1779 and 1780.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1975.

Decided July 9, 1976.

Rehearing and Rehearing En Banc Denied Aug. 13, 1976.

Eugene E. Siler, Jr., U. S. Atty., James E. Arehart, Lexington, Ky., for appellee United States.

James L. Cobb, Jr., Cobb & Oldfield, Covington, Ky., for appellant in No. 75–1778.

B. H. Berg, Cincinnati, Ohio, for appellant in 75–1779.

Ralph F. Crisci, Cincinnati, Ohio (Court-appointed CJA), for appellant in 75–1780.

Before WEICK, PECK and LIVELY, Circuit Judges.

WEICK, Circuit Judge.

This case involves charges of conspiracy, extortion and perjury against three Newport, Kentucky police officers. Appellants Donald D. Faulkner, William E. Wells and Jerry McClanahan, the police officers, were indicted by the grand jury in the District Court on fourteen counts. All three appellants were indicted on one count of conspiracy to violate the Hobbs Anti-Racketeering Act, 18 U.S.C. § 1951. In addition, they were charged individually with ten substantive violations of the Hobbs Act (Counts 2–4 charged Faulkner; 5–8 charged Wells; and 9–11 charged McClanahan). Finally, Wells (in Count 12) and McClanahan (in Counts 13–14) were charged with making false statements to the grand jury during its investigation of this case, a violation of 18 U.S.C. § 1623.

The trial of the case against the defendants lasted nearly one month. Essentially it was the Government's position that these three police officers had conspired to and did obtain "protection money" from a well-known nightclub in Newport, Kentucky, named "The Brass Ass." The jury found the defendants guilty on all counts charged against them. They were sentenced to five years imprisonment on each count, the sentences to run concurrently.

The defendants filed separate appeals which were consolidated for oral argument. Pending appeal the defendants have filed in the District Court a motion for a new trial on newly discovered evidence. They also filed a motion to stay this appeal pending the determination of that motion; the motion for a stay pending appeal was denied. The District Court is empowered to hear that motion and need apply to this Court only if it decides to grant the motion during the pendency of this appeal.

I

An important government witness in this case was Samuel Harris, who became manager of the nightclub and assumed control over the books and receipts of the nightclub after Vance Raleigh, the owner of the club, was killed. Harris testified that he had paid protection money in behalf of the nightclub, to the defendants. That testimony was buttressed by a ledger book in which he had recorded the dates and amounts of the various payoffs. Defense counsel were permitted to examine this ledger before the trial.

At the trial Harris testified that he kept the ledger book in his office file cabinet at the nightclub. There was a fire in the nightclub, allegedly caused by arson, while this ledger book was in that file cabinet; the ledger book was water-spotted and singed as a result. Faulkner offered three witnesses who testified that the file drawer in which the ledger book was supposedly kept did not contain the book on the night of the fire.

Faulkner contends that the District Judge erred in refusing to allow Faulkner to have the ledger book chemically tested. At a hearing held to determine whether such testing should be ordered, the alleged chemist offered by the defense testified that he would be able to detect traces of gasoline if the book had been exposed to a gasoline fire. However, because certain circumstances could have prevented the gasoline vapors from permeating the book, an absence of gasoline traces would not establish conclusively that the book was not in the fire. Thus, the District Judge concluded that the testing would not have produced material evidence. We agree.

Competent evidence was presented at the trial in Samuel Harris' testimony that he

left the ledger in the file cabinet. The three witnesses produced by Faulkner testified to the contrary. The issue was thus joined and the factual determination as to which of the witnesses should be believed was within the sole province of the jury. Inconclusive testing (for which no request was made prior to trial) as to the presence of gasoline traces would not have aided the jury in making this determination. As the District Judge stated, in order to use the results of the chemical test it would have been necessary to pile inference upon inference.

In view of the subsequent evidence offered by the Government with respect to the qualifications of the alleged chemist, such testing appears to be all the more pointless. The so-called chemist, "Dr." Papucci, testified that he had a Ph.D. degree in chemistry from Illinois Institute of Technology; the truth was that he had never received any degree from the Institute. He had merely taken six courses there, flunking five. However, "Dr." Papucci did testify at length, and for whatever it was worth, that the ledger could not have been in a fire such as that occurring at the nightclub. Appellant thus received the benefit of the strongest possible testimony from their alleged expert witness.

We find no prejudicial error in the District Court's refusal to allow chemical testing of the ledger.

## II

While Samuel Harris was paying off various members of the Newport police force, he was taping those transactions. The Court listened to those tapes *in camera* and held that they could not be introduced into evidence because they were in part unintelligible; however, prior to trial the Government was able to prepare a transcript of the tapes, and counsel for the defendants were provided with that transcript.

The Government used the transcript intensively in cross-examining the defendants and in examining Samuel Harris. The United States Attorney would read to a defendant a statement from the transcript and would inquire of him whether he had made that statement to Harris. Later, Harris was put on the stand and testified that the statements had been made by the defendants to him. Wells challenges this procedure; he contends that this was a devious procedure used to get the tapes before the jury after they had been held inadmissible by the trial court.

■ We note first that the tapes were ruled inadmissible at the request of the defendants because they were in part unintelligible and not because they were irrelevant to the cases. The United States Attorney used the transcript of the tapes to refresh Harris' recollection. Documents need not be admitted or admissible in evidence in order to be used to refresh the recollection of a witness. The direct evidence used to impeach the defendants came from Harris who, on redirect examination, testified that he had heard a defendant make each statement which was read to him by the United States Attorney. In addition, on direct examination Harris testified as to the substance of those same transactions.

The determination of whether the transcript of the tapes should be used for the purpose of refreshing the witness' recollection, is within the discretion of the District Judge. *United States v. Cranson,* 453 F.2d 123 (4th Cir. 1971), *cert. denied,* 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972). However, some caution must be exercised to insure that the document is not used to put words into the mouth of the witness. *Esperti v. United States,* 406 F.2d 148 (5th Cir.), *cert. denied,* 395 U.S. 938, 89 S.Ct. 2005, 23 L.Ed.2d 454 (1969).

■ Because Harris had testified as to the substance of the transactions he had with each defendant, his testimony occurring prior to the time that the United States Attorney refreshed his recollection as to the exact language by reading from the transcript of the tapes, we find no abuse of discretion in permitting Harris' recollection to be refreshed in this manner.

## III

Appellants contend that the admission of Barbara Jenkins' testimony constituted plain error. Jenkins worked at the nightclub prior to the time that Samuel Harris had become the manager. She testified that during the time period of the conspiracy charged under Count 1 of the indictment Wells approached her to collect $500 of protection money which he claimed was owed by the deceased owner of the nightclub to a group of police officers, and that she made the payment to him.

■ Count 1 of the indictment charged a conspiracy to obtain money from the nightclub induced by the defendants acting under color of official right in their capacities as police officers. The testimony of Jenkins as to the $500-payment constituted proof of an overt act relating to that conspiracy. Admission of the testimony did not constitute error.

Appellants contend further that the trial judge erred in failing to instruct the jury as to the limited application of Jenkins' testimony; however, they failed to enter any objection to the charge with respect to this matter prior to the time the jury retired when the Court requested objections to be made. Fed.R.Crim.P. 30 provides:

. . . No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . .

■ We have held that objections to the jury instructions must be made at the time of trial unless the charge constituted plain error. In view of the fact that the trial judge clearly and explicitly stated that Jenkins' testimony was admissible against all of the defendants for the purpose of establishing the conspiracy, we are unable to find such plain error in the case at bar. *See United States v. Billingsley,* 474 F.2d 63 (6th Cir.), *cert. denied,* 414 U.S. 819, 94 S.Ct. 42, 38 L.Ed.2d 51 (1973). Jenkins' testimony was admissible also against Wells on the substantive offense.

Finally, Wells asserts that the trial court erred in admitting testimony from Jenkins that she paid him $1,000 on another occasion to purchase police protection against the threats of a hit man who was in Newport.

■ As a general rule, in jury trials evidence of a criminal defendant's prior misconduct is inadmissible in the prosecution's case in chief to show the accused's bad character or criminal propensity. *United States v. Ring,* 513 F.2d 1001 (6th Cir. 1975). However, there are exceptions to this general rule which permit evidence of a defendant's prior misconduct to "show motive, intent, absence of mistake or inadvertence, identity of the offender or a common plan, pattern or scheme." *United States v. Ring, supra,* at 1004.

■ The testimony of Jenkins tended to prove that Wells was acting pursuant to a plan or pattern of extortion which characterized his dealings with the nightclub in his official capacity. We find no error in the admission of Jenkins' testimony.

■ Although the trial judge did not instruct the jury as to the limited nature of this testimony, appellant waived any right to object because the failure to so instruct did not constitute plain error. Fed.R.Crim.P. 30.

Furthermore, McClanahan and Faulkner were not prejudiced by this failure to instruct as the trial judge explicitly instructed the jury at the time the testimony was being elicited that such testimony was not to be considered against them.

## IV

When appellant Faulkner was cross-examining Harris he moved the Court for an order requiring the Government to produce any prior statements made by the witness, in possession of the United States Attorney. The trial judge declined to order the production of Harris' testimony before the grand jury. This ruling was in error as the Jencks Act permits a defendant to have such access. 18 U.S.C. § 3500(e)(3). How-

ever, after appellant had completed his cross-examination of Harris the United States Attorney advised the Court that defense counsel should be provided with the grand jury minutes. After receiving and examining the grand jury testimony appellant was then permitted to re-cross-examine Harris.

Appellant concedes the difficulty in finding any prejudice resulting from the initial error by the trial judge. In our opinion the error was cured. We hold that no such prejudice exists. Furthermore, we are of the opinion that the curtailment of the re-cross-examination by the Judge, which is charged as error, served only to limit questions that were cumulative, repetitive and irrelevant to the cases being tried. Limitation of the scope of cross-examination is within the sound discretion of the District Judge and will not be overturned in the absence of abuse. *United States v. Marchesani,* 457 F.2d 1291 (6th Cir. 1972); *Poliafico v. United States,* 237 F.2d 97 (6th Cir. 1956), *cert. denied,* 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

We find no abuse of discretion. We conclude that the District Judge permitted a full and fair cross-examination of Harris.

V

Patrolman McClanahan contends that he was denied the effective assistance of counsel when the trial judge refused to grant a continuance of his trial. On the morning of his trial the Judge informed McClanahan's recently retained counsel that he would not be permitted to represent McClanahan because of a "possible conflict" with the State Bar of Kentucky. Another attorney, Ralph Crisci, had been contacted on the preceding Friday in expectation of this occurrence. Crisci appeared that morning in the District Court and had his first opportunity to confer with McClanahan for thirty minutes. Crisci then requested a continuance of the trial so that he could familiarize himself more fully with the case. That request was denied and the trial of the case began that morning.

The ruling on a motion for a continuance is within the sound discretion of the District Court and will not be overturned absent a showing that the ruling constituted an abuse of discretion. *United States v. Ploeger,* 428 F.2d 1204 (6th Cir. 1970). Such an abuse of discretion would exist if McClanahan were denied his Sixth Amendment right to the effective assistance of counsel. An analysis of all the facts and circumstances of this case is necessary in order to determine whether McClanahan was denied that right. *United States v. Knight,* 443 F.2d 174 (6th Cir. 1971).

McClanahan was originally represented by Attorneys Charles Schear and Mott Plummer. On October 21, 1974 Plummer filed a motion for both attorneys to withdraw as counsel stating that Shear was ill and could not participate; that he [Plummer] had filed numerous motions and had attended hearings on those motions; that they would not be able to represent McClanahan and he requested the Court to remove their names as counsel; he stated that McClanahan "did not want a continuance and that he was seeking and had other counsel." The Court granted the motion.

Several of the attorneys whom McClanahan approached had schedule conflicts and thus were unable to represent him. McClanahan also attempted to retain the attorney representing defendant Faulkner; however, Faulkner's counsel declined to take McClanahan's case because of a possible conflict of interest between the two defendants. McClanahan then retained Attorney Barry Wehrman who immediately sought a continuance because of a schedule conflict; his motion was denied. Finally, McClanahan contracted Burton Signer who agreed to represent him; however, Signer was disqualified on the morning of trial, and Crisci, who was contacted on the preceding Friday, took over the case.

No absolute rule can be articulated as to the minimum amount of time required for an adequate preparation for trial of a criminal case. Thus we look for a showing from the defendant of prejudice, *i. e.,* a showing

that the continuance would have made relevant witnesses available, or would have added something to the defense. *United States v. Moore,* 419 F.2d 810 (6th Cir. 1969); *United States v. Sisk,* 411 F.2d 1192 (6th Cir. 1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 584, 24 L.Ed.2d 509 (1970); *United States v. Decker,* 304 F.2d 702 (6th Cir. 1962).

McClanahan was unable to make any showing of prejudice as a result of his late employment of counsel. Our examination of the record and the facts and circumstances of this case in their totality leads us to the conclusion that McClanahan's counsel had more than an adequate amount of time for preparation.

First, we note that the issues in this extortion case were relatively uncomplicated. Further, during most of the pretrial proceedings McClanahan was represented by his original counsel; none of his rights was jeopardized by any lack of assistance prior to the commencement of the trial. Furthermore, the trial lasted nearly one month and there were several adjournments; thus Crisci had many opportunities to consult not only with his client and with McClanahan's prior counsel, but also with counsel for the other defendants. Although the trial began on November 13th, the first witnesses did not take the stand until November 15th; indeed, the important prosecution witness, Samuel Harris, did not take the stand until November 18th. Crisci did not present McClanahan's case until December 3d.

Crisci actively participated in the trial of the case, conducting a vigorous defense, cross-examining Government witnesses, making motions to suppress and dismiss indictment counts, to suppress tapes, and for a recess to study grand jury transcripts; he objected to testimony, and moved for judgment of acquittal. We conclude that there was sufficient time for Crisci to prepare adequately to defend his client. McClanahan's defense was in able hands.

The District Judge refused to grant a continuance because he felt that McClanahan was "temporizing the Court." (A. XIV

at 1139). Given this consideration and the fact that McClanahan was able to demonstrate no prejudice resulting to him, we conclude on the facts and circumstances of this case that the District Judge did not abuse his discretion in refusing to grant the continuance. We find no prejudicial error in the record. The judgment of conviction was supported by substantial evidence.

The judgment of the District Court is affirmed.