Danny Lane IRVIN, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4823.

Supreme Court of Wyoming.

Sept. 27, 1978.

K. Craig Williams, Rawlins, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

This is an appeal from a conviction, after trial by jury, of the offense of aggravated robbery while using or exhibiting a firearm, in violation of § 6–66, W.S.1957, now § 6–4–402, W.S.1977. Appellant, Irvin, raises questions concerning the right of an accused to have substitute counsel appointed by the court if a rift has developed between the accused and the public defender, and the correlative right of the accused to a continuance if he chooses to represent himself when the appointment of substitute counsel is denied. Irvin also raises a question relative to evidence demonstrating collateral misconduct for which a mistrial was sought but denied by the trial court. Finding no error in the rulings of the trial court

in these proceedings we shall affirm Irvin's conviction.

In presenting his argument to this court Irvin first contends that the denial of his request for appointment of substitute counsel, when supported by the motion of the appointed public defender to be relieved, violated his constitutional and statutory rights, and amounted to an abuse of its discretion by the trial court. His second contention is related to the first, and it encompasses a claim that the denial of his request for a continuance when he chose to represent himself rather than to permit the appointed public defender to represent him, under the circumstances of this case, constituted a prejudicial denial of his constitutional right to a fair trial. The third contention presented by Irvin is that evidence of another criminal act was introduced in the prosecution's case, and that the district court erred in not granting his motion for a mistrial because of this prejudicial error. In responding to these arguments the State of Wyoming urges that both the refusal to appoint substitute counsel and the refusal to grant a continuance were discretionary rulings on the part of the trial court, and that there was no abuse of the exercise of discretion by the trial court in either instance. With respect to the evidence of another criminal act, the State contends that the issue was not properly preserved, and that, in any event, the evidence is proper and admissible as bearing upon the question of identity.

This is an appeal by Irvin from a second conviction arising out of the same circumstances. His first conviction was reversed by this Court. (*Irvin v. State*, Wyo., 560 P.2d 372 (1977)). Ordinarily such a sequence of events would have little significance in the second appeal, but, as will appear, the fact of a retrial must be taken into consideration in evaluating the exercise of discretion by the trial court insofar as Irvin's first two claims of error are concerned.

*The Right to Substituted Appointed Counsel*

The person accused of the commission of a crime has the constitutional right to be represented by an attorney of his own choice. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); *Adger v. State*, Wyo., 584 P.2d 1056. This is the construction given to the Sixth Amendment to the Constitution of the United States of America, and the same construction must be given Art. 1, § 10 of the Constitution of the State of Wyoming. See *Hoskins v. State*, Wyo., 552 P.2d 342 (1976), reh. den., 553 P.2d 1390 (1976); *Dryden v. State*, Wyo., 535 P.2d 483 (1975). In those instances in which the person accused of crime is unable to employ his own counsel, and thus personally exercise his constitutional right, the choice of counsel is then made for him by the State through the district judge. *United States ex rel. Mitchell v. Thompson*, 56 F.Supp. 683 (S.D.N.Y.1944). The accused has the absolute right to have counsel appointed if he is unable to employ his own attorney. *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); *Hoskins v. State*, supra; *Dryden v. State*, supra.

The rule which appears to be universal, is that the constitutional right to have counsel appointed does not include a right to demand that a particular attorney be appointed by the Court. See cases cited in Annot., 66 A.L.R.3d 996 (1975). This rule also pertains in instances in which a defendant asks for the substitution of a particular attorney. E. g., *United States v. Burkeen*, 355 F.2d 241 (6th Cir. 1966), cert. den., 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966), reh. den., 385 U.S. 893, 87 S.Ct. 28, 17 L.Ed.2d 127 (1966); *People v. Hughes*, 57 Cal.2d 89, 17 Cal.Rptr. 617, 367 P.2d 33 (1961); *State v. Reid*, 146 Conn. 227, 149 A.2d 698 (1959); *Douglas v. State*, Fla.App., 212 So.2d 42 (1968); *People v. Cox*, 22 Ill.2d 534, 177 N.E.2d 211 (1961), cert. den., 374 U.S. 855, 83 S.Ct. 1925, 10 L.Ed.2d 1076 (1963); *Schuble v. Youngblood*, 225 Ind. 169, 73 N.E.2d 478 (1947); *Rahhal v. State*, 52 Wis.2d 144, 187 N.W.2d 800 (1971). Cf., *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968); and *Brewer v. State*, 4 Tenn.Cr.App. 265, 470 S.W.2d 47 (1970).

While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an abuse of discretion is shown. A factual showing of good cause for the appointment of substitute counsel is essential to the demonstration of an abuse of discretion, and good cause is to be found in incompetence, commitment to a position or an interest which would conflict with the furnishing of an effective defense to the accused, or other good reason to conclude that appointed counsel is unable to furnish effective assistance. *United States v. Burkeen,* supra; *Davis v. Stevens,* 326 F.Supp. 1182 (S.D.N.Y.1971); *Drumgo v. Superior Court of Maren County,* 8 Cal.3d 930, 106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984 (1973), cert. den., 414 U.S. 979, 94 S.Ct. 272, 38 L.Ed.2d 223 (1973); *Martinez v. People,* 173 Colo. 515, 480 P.2d 843 (1971); *State v. Forsness,* 159 Mont. 105, 495 P.2d 176 (1972).

In this instance after remand upon reversal of the first conviction an order was entered in the district court on March 14, 1977, setting the case for trial on April 4, 1977. On March 23, 1977, the public defender filed a motion with a supporting affidavit requesting that the public defender's office be relieved of all obligations in defense of Irvin. The accompanying affidavit stated that prior to the verdict in the first trial Irvin requested the public defender and the assistant public defender to declare themselves incompetent. The affidavit went on to say:

"6. We are unable to achieve the rapport, trust and confidence of said Irvin necessary to the vigorous defense to which he is constitutionally entitled."

It is apparent that this motion was filed at Irvin's behest. The record shows no demand for a hearing of nor a formal denial of this motion by the trial court, but it is clear from the record that when the motion was filed the district court advised the public defender, who in turn advised Irvin, that the motion would not be granted.

On the morning of trial Irvin presented a handwritten petition to proceed pro se and for a continuance which was supported by a purported affidavit. The pleading was not signed, and the affidavit was signed but not verified. The trial court, however, did treat these documents as presenting in part, at least, Irvin's position. Irvin stated in these documents: that the public defender told him he could not change attorneys because the court would not allow it; that he knew of the date of new trial fifteen days previously but that he did not see a lawyer for six days after that, and that then they only discussed pleading to a lesser charge; that he told the public defender he did not want him to represent him and the reason why; that the public defender told him he did not want to represent him, but the court would not take him off Irvin's case; that he and the public defender had had "gulf" differences for 26 months and that he dismissed the public defender in 1975; that the public defender did not handle this prior appeal; that he had the public defender as an attorney two years previously and tried to get him off his case; that he felt that the public defender did not want to help him in any way; that he had asked the public defender several times to go to court and see about a bond hearing; that he also asked about law books and all the public defender told him or talked about was pleading guilty to a lesser charge; that the public defender wanted to do things his own way for his own personal gain, and not in Irvin's interest.

The transcript of the dialogue among the trial judge, counsel and Irvin prior to the trial demonstrates that Irvin agreed that this same case involving the same factual situation had been tried in the court two years previously. The judge stated that the public defender previously had researched the case on the first trial, and that he assumed that the public defender was prepared to go again on the trial set for April 4, 1977. The public defender responded that he was prepared to proceed to trial. In discussing the motion to withdraw made by the public defender the judge pointed out that the motion had been discussed orally and that he had advised the public defender that he could see no reason for re-

lieving him, and that there had been no effort to pursue the motion by asking that it be set for hearing prior to trial. The judge pointed out that appointed counsel was the public defender, and the district judge stated his opinion that he was adequate and competent counsel, which he had demonstrated over a period of two or three years while serving in the capacity of public defender. The judge also stated that the fact that Irvin did not like the public defender did not make him incompetent counsel. The district judge refused to appoint substitute counsel in lieu of the public defender.

 Our examination of the record does not disclose any facts which would demonstrate an abuse of the trial court's discretion in so ruling. There is nothing to show incompetence of counsel nor any conflicting interest. Irvin's assertions and allegations in that regard do not serve as evidence of the facts as he claims them to be. *In re Brown,* 9 Cal.3d 679, 108 Cal.Rptr. 801, 511 P.2d 1153 (1973). At most the record demonstrates that after his first trial, for reasons that do not appear, Irvin asked his trial counsel to declare themselves incompetent. Obviously there would have been an advantage to him on appeal if they had agreed to do that. Having taken that stance Irvin has maintained a consistent position, but we are satisfied that his claims and contentions, absent some evidence of incompetence or a conflict of interest, are insufficient to demonstrate an abuse of discretion by the trial court here.

The cases cited by Irvin are not persuasive to the contrary. *McKinnon v. State,* Alaska, 526 P.2d 18 (1974) and *Smith v. Superior Court of Los Angeles,* 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968), both involved situations in which the court appointed substitute counsel for appointed counsel whom the respective defendants wanted to represent them. *Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970), is not the inverse of Irvin's case, but it is distinguishable by the fact that the dispute between the defendant and counsel there arose almost immediately, and it was called to the court's

attention promptly. Here any breach occurred only after the trial of the case the first time, and it was premised only upon Irvin's request that counsel then declare themselves incompetent. Further, in *Brown v. Craven,* supra, the Court of Appeals noted that the trial court denied Brown's motions summarily and made no adequate inquiry into the cause of Brown's dissatisfaction.

 Upon the refusal of the district judge to appoint substitute counsel Irvin pursued his petition to proceed pro se and for a continuance. The district judge permitted Irvin to act as his own counsel but required the public defender to remain present and be available to consult with Irvin during the course of the trial. Prior to doing so, the district judge cautioned Irvin that this was a serious matter, and asked him whether he had given adequate thought to this tactic and whether he was sure he wanted to proceed in his own behalf. The court asked him about his education, which Irvin stated was up to the ninth grade. The judge then asked Irvin if he had any background or training in this area, and Irvin said that he had been studying law on his own for two years. The district judge asked him if he had any idea about the method of making objections, cross-examining and examining witnesses, and making proper motions, at the same time pointing out that these procedural steps might require more background and training than Irvin had at that point, and that he might possibly miss some of the things that he should do or do things that he should not do if he had proper legal counsel. Irvin responded that he was aware of these risks and persisted in his desire to proceed as his own attorney. An accused has the right to represent himself which must be regarded if he is competent to make that decision. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1972). This right has been recognized by this Court in *Miller v. State,* Wyo., 560 P.2d 739 (1977) and *Ash v. State,* Wyo., 555 P.2d 221 (1976). The record adequately shows a knowing and intelligent waiver of

the assistance of counsel by Irvin and his awareness of the pitfalls and disadvantages of representing himself and the possible consequences. See *State v. DeLuna*, 110 Ariz. 497, 520 P.2d 1121 (1974).

*The Right to a Continuance*

■ From the time that this Court first considered the matter in *Robinson v. State*, 18 Wyo. 216, 106 P. 24 (1910), until now this Court has followed the rule that a motion for continuance based upon the necessity for additional trial preparation is addressed to the sound discretion of the trial court, the exercise of which is subject to review but only for abuse of discretion. *Adger v. State*, supra; *Ash v. State*, supra; and authorities cited therein. The determination as to whether there has been an abuse of discretion is going to depend upon the facts and circumstances of each individual case, as we have recognized in *Ash v. State*, supra, and *Adger v. State*, supra, by our reliance upon *Unger v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), reh. den., 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). The court is justified in refusing to permit a defendant to manipulate or subvert the orderly procedure of the court in connection with the exercise of his right to counsel. *United States v. Casey*, 480 F.2d 151 (5th Cir. 1973), cert. den., 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973). An extensive compilation of cases dealing generally with the right to counsel and the manner in which courts have disposed of situations in which a defendant wishes to change counsel can be found in Annot., 73 A.L.R.3d 725 (1976). In those instances in which a defendant chooses to represent himself the general rule still is applied that the matter of a continuance is a discretionary matter with the trial court, and the refusal to grant the continuance is not error unless an abuse of discretion is demonstrated. *People v. Bourland*, 247 Cal.2d 76, 55 Cal.Rptr. 357 (Cal.App.1967), cert. den., 388 U.S. 920, 87 S.Ct. 2142, 18 L.Ed.2d 1367 (1967); *People v. Murphy*, 3 Ill.App.3d 345, 277 N.E.2d 721 (1972); *Walker v. State*, 85 Nev. 337, 455 P.2d 34 (1969); *Robertson v. State*, Okl.Crim., 503 P.2d 896 (1972).

■ Whether the discharge of counsel is supported by sufficient reasons or not is one of the factors which courts have regarded as significant in considering a motion for continuance. See, e. g., *Arellanes v. United States*, 302 F.2d 603 (9th Cir. 1962), cert. den., 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); *Baca v. People*, 139 Colo. 111, 336 P.2d 712 (1959); *People v. Washington*, 41 Ill.2d 16, 241 N.E.2d 425 (1968); *Walter v. State*, 4 Md.App. 373, 243 A.2d 626 (1968); *State v. Pflieger*, 15 Or.App. 383, 515 P.2d 1348 (1973); *State v. Penderville*, 2 Utah 2d 281, 272 P.2d 195 (1954).

In the instant case there was no justification for discharge of counsel. Irvin was advised by the public defender that the court would not take him off Irvin's case. Irvin expresses a lack of confidence in, and perhaps dislike for the public defender, but still there is no evidence showing any reason for discharge. The case was not being tried initially, and Irvin had been present at the previous trial. The court pointed out that Irvin knew who the witnesses had been before and would be again, and inquired as to the reasons behind the request for a continuance. Irvin responded that he needed to have legal material to go ahead and perform his job, and mentioned specifically a bill of particulars together with "things like this." Irvin further indicated that he needed more time to prepare his case because he had not gone through the transcript or anything, and in response to a particular inquiry as to those things he would do if a continuance were granted, Irvin responded only that he would prepare a defense in his behalf. Pursuing that the court asked whether "prepare a defense" meant legally or factually, and again pointed out to Irvin that he had heard all of the evidence and all the testimony of the witnesses the first time the case was tried. Irvin's response was that this was a different trial, and he suggested that there were other witnesses that the State intended to call. The county attorney indicated he did not think the State would call any new witnesses other than those used in the ini-

tial trial except possibly for rebuttal, but the praecipe for a subpoena does show an additional witness, Larry Wall, in the second trial. Larry Wall, in fact, did not testify, and the record discloses that Irvin was arrested in Wall's apartment, and that Wall was present at the scene of the robbery and participated in some of the events of the robbery.

After the jury was selected Irvin renewed his request for a continuance stating that he needed "a bill of exceptions." There was further dialogue about additional witnesses, but Irvin was vague as to which witnesses he wanted to know about and why it was improper for the State to call them as he was contending. The court ultimately ruled that it still would refuse to grant a continuance because prepared counsel was present who stated that he was ready for trial. The trial judge further stated that the information available to him persuaded him that Irvin had been dilatory in presenting his request to act as his own counsel, and in his request for a continuance. The court refused to permit Irvin to postpone the trial simply by discharging the public defender who was going to remain and act as standby counsel. If such a tactic were permissible it certainly would represent one way of playing a cat and mouse game with the court. *Ash v. State,* supra.

The record shows that counsel who previously had been appointed was present during the course of the trial, assisted at various stages of the trial, and in fact, made a motion for a mistrial, the denial of which Irvin complains as his third point of error. When Irvin elected to testify he was examined by the public defender. A comparison of the two trial records reveals that they are substantially identical with the exception of those tactical mistakes Irvin made in acting as his own attorney in the second case.

Examining all of the facts and circumstances, we are not persuaded that Irvin was denied a fair trial because of the refusal of the district court to grant a continuance. The record is barren of any showing by Irvin of the particular need for additional time, and in this respect the case is different from *Adger v. State,* supra, but quite similar to the case of *Ash v. State,* supra. We therefore conclude there was no abuse of discretion on the part of the district judge in refusing to grant Irvin's motion for a continuance in this case. *State v. Powell,* 277 N.C. 672, 178 S.E.2d 417 (1971).

*Collateral Misconduct*

After the robbery, and after Irvin's arrest, a search was conducted of the premises where he was arrested which were occupied by Larry Wall, and a firearm which was similar to the one used in the robbery was discovered and seized. A witness for the State then was called to identify the firearm by serial number. She also identified Irvin as the person who had obtained the firearm from the store at which she worked. The record discloses the following sequence of testimony:

"Q. And what, if anything, happened at that time and place?

"A. It was about a quarter to six, six o'clock, and this gentleman came into the store and he wanted to know where we kept our guns, he wanted to take a look at a pistol. I showed him where we kept our pistols and—do you want me to go into detail?

"Q. Yes, please.

"A. O.K. And he said that he was a truck driver and he wanted to buy a pistol for his wife because he would be traveling a lot. So I showed him the pistols that we had and he asked he [sic] several questions about different ones of them, and this one in particular gun I showed it to him— took it out and showed it to him— and he looked it over and said that he thought maybe this was the particular one he would take, and he did. And he ran out the building and I went chasing after him and when he got in the alley I turned around and went back in the store.

"Q. When you say he took it, did you sell it to him?

"A. No.

"Q. Did he pay for it?

"A. No.

"MR. MAGEE [public defender]: Your Honor, may we approach the bench at this point?

"THE COURT: Yes.

"(The following proceedings had at the bench between the court, Mr. Carroll [county attorney] and the defendant, outside the hearing of the jury.)

"DEFENDANT: Move for a mistrial on the evidence of another crime.

"THE COURT: The motion for a mistrial will be denied. You will not pursue that, Mr. Carroll.

"MR. CARROLL [county attorney]: Your Honor, what we are doing in this instance, it ties into the same gun which they identified this defendant by the same gun that was found at the arrest.

"THE COURT: She may identify the gun, and if she believes it to be the same, without saying whether he stole it or not. You won't pursue that any further.

"MR. CARROLL: Yes, Your Honor."

The State did not pursue further the circumstances under which the firearm was obtained. The situation was alluded to by Irvin in his cross-examination, however, when he asked the witness about the person that "supposedly stole this gun," and went on to interrogate her as to whether that person ever had been convicted of stealing the gun. When Irvin presented his closing argument he again talked about the witness saying that he stole the pistol, and inquired of the jury rhetorically why he was not convicted of it if he stole it. The State made no attempt to exploit the testimony beyond the proposition that the firearm found in the premises searched had been obtained by Irvin in the manner in which the witness testified.

The record from the previous trial discloses that there was an arrangement pursuant to which the prosecution agreed to and did not at that trial delve into the circumstances under which the firearm was obtained. At argument the appellant suggested that this approach was the product of a granting by the district judge of a motion in limine. The earlier order of the district judge, however, was premised upon the agreement of the State to so proceed. In this trial Irvin did not recall this arrangement to the court, and the prosecuting attorney who interrogated the witness in the second trial was a different person from the attorney who interrogated the witness at the prior trial. There is, therefore, no clear violation of an inhibition imposed by the court in the form of a prior restraint. Furthermore, the violation of any such agreement or order was not a basis for the objection made at the trial.

 It well may be that by emphasizing the matter himself Irvin could be charged with waiver of his claim of error. We conclude, however, that the matter need not be premised on that ground but instead adopt the recognized exception to the general rule that evidence of collateral offenses is error, which exception, in effect, states that such evidence is admissible to prove the identity of the defendant as the person who committed the crime with which he is charged. See *Dorador v. State,* Wyo., 520 P.2d 230 (1974); *Valerio v. State,* Wyo., 429 P.2d 317 (1967); *State v. Lindsay,* 77 Wyo. 410, 317 P.2d 506 (1957); *State v. Mitchell,* 112 Ariz. 592, 545 P.2d 49 (1976); *Miles v. State,* Okl.Crim., 554 P.2d 1200 (1976); *Junior v. State,* 89 Nev. 121, 507 P.2d 1037 (1973); *State v. Aguirre,* 84 N.M. 376, 503 P.2d 1154 (1972).

We conclude that there has been shown no abuse of discretion on the part of the trial judge in refusing to appoint substitute counsel or in refusing to grant Irvin a continuance when he elected on the morning of trial to represent himself. The evidence of collateral conduct was admissible under a recognized exception to the general rule.

The judgment of the trial court is affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I would have reversed the defendant's conviction and remanded the case for a new trial. The right to effective assistance of counsel is, for all criminal defendants, basic and constitutionally mandated.[1] Given the facts of this case, the denial of this defendant's request for substituted counsel, coupled with a denial of a continuance, was a denial of his right.

The majority opinion requires a defendant to make a "factual showing of good cause" in order that he be entitled to an appointment of substitute counsel. It then concludes that not only was there no showing of incompetence of counsel or a conflict of interest, but the defendant's representation of a lack of trust and confidence as between attorney and counsel, coupled with counsel's agreement that such trust and confidence are lacking, is not sufficient to fulfill the good-cause requirement. On the contrary, it is my judgment that the relationship of mutual confidence between a lawyer and his client is essential to a fulfillment of the lawyer's professional responsibility of furnishing effective assistance of counsel and that it cannot exist in circumstances such as these where both client and counsel agree that the requisite confidence and trust are absent.

I find the law to be that where a defendant shows good cause why mutual confidence and trust between him and his attorney no longer exist, the court should substitute counsel. *Commonwealth v. Velasquez,* 437 Pa. 262, 263 A.2d 351, 353 354 (1970). In this case, Justice Roberts of the Pennsylvania Supreme Court was confronted with a situation where the defendant's counsel insisted the defendant plead guilty to first-degree murder, while it was defendant's wish that he be permitted to go to trial. Counsel, on the morning of the trial, moved for a continuance because of this difference which had culminated in a lack of confi-

dence and trust between the attorney and client. The motion asked that the matter be continued until other counsel could be employed and given adequate time to prepare the defense. The court denied the motion and the client pled guilty one-and-one-half hours later.

Justice Roberts held that the plea could not stand because it was not freely given since the defendant had been placed in a position where he had no choice but to enter such a plea. The court said:

"It is true that a defendant, whether represented by retained or appointed counsel, cannot continually request new counsel when disagreements arise. But '[s]ince a relationship of mutual confidence between lawyer and client is important to the lawyer's fulfillment of his professional functions, where good cause is shown by the defendant why that confidence does not exist the court should substitute counsel.' ABA Minimum Standards, Providing Defense Services 51 (1967). In the instant case 'good cause' was certainly shown . . . .

"Since the court's failure to grant the motions for continuance and withdrawal effectively deprived appellant of any meaningful choice when he entered his guilty plea, appellant must be given a chance to plead over. The judgment of sentence of the Court of Quarter Sessions of Philadelphia County is vacated and the case remanded for a new trial."

Here, the defendant showed to the trial court that he had previously informed counsel that he did not want his representation. The attorney, in turn, responded that he did not want to represent the defendant. The defendant related that his attorney's only concern was to effect a plea to a lesser offense, while the defendant asserted his innocence and wished to go to trial with other counsel. The record further reveals that the defendant had previously dismissed

---

1. The duty in a capital case to assign counsel "is not discharged by an assignment at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, n. 1. *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, without discussion of the term "effective," extends the constitutional right of counsel to any felony.

this appointed counsel, charging him with incompetence. The defendant's attorney had attempted to withdraw, citing an inability "to achieve the rapport, trust and confidence of said Irvin necessary to the vigorous defense to which he is constitutionally entitled." Surely, it can be understood by all why an appointed counsel would entertain a lack of trust and confidence with his client when the client had previously charged him with incompetence. I hasten to add that there is no showing that the attorney was in any way incompetent. However, once the public charge of incompetence is made by a client against his lawyer, in these circumstances, the question of the lawyer's actual competence is irrelevant to the issue of the existence of mutual confidence between lawyer and client. *Competence* is not the issue. *Trust* is the issue. Good cause for substitution is, indeed, shown when an attorney and his client agree that they have irreconcilable differences, resulting in a lack of rapport, trust and confidence. This is particularly true in a situation, like this case, where the defendant has not continually requested new counsel whenever disagreements arise. Compare, *Miller v. State,* Wyo., 560 P.2d 739 (1977).

The majority attempts to buttress its position on the substitution of counsel, by concluding that the defendant made a "knowing and intelligent waiver of the assistance of counsel." This position might be tenable if we could ignore the circumstances leading up to the defendant's decision to act as his own attorney. I cannot escape the conclusion that the defendant was given no real freedom of choice to decide whether he wished to defend himself. It was like the options that were made available to the defendant in *Commonwealth v. Velasquez, supra.* There, the defendant's choice was to continue with a lawyer who wanted him to plead guilty against his will or be represented in trial in circumstances where the attorney-client confidence had been destroyed. The plea evolving from these conditions was held faulty because it was not freely given.

In the case at hand the defendant could either accept the representation of a lawyer in whom he had no confidence and who admittedly did not feel he could furnish the defense to which the defendant was constitutionally entitled—or—the defendant could go it alone unprepared. This was no choice at all!!

To make matters worse, the majority concludes there was no abuse of discretion in denying the defendant's request for a continuance so that he could prepare his own defense. Underlying the majority's conclusion is its impression that the defendant was "playing a cat and mouse game with the court." This belief presumably is premised on the majority's inability to find a justification for a substitution of counsel. In addition, the majority points to the record and finds an absence of any "particular need for additional time." It then indulges the same kind of a fault-finding search which I have denounced in both *Ash v. State,* Wyo., 555 P.2d 221; and *Adger v. State,* Wyo., 584 P.2d 1056 (handed down Sept. 11, 1978), on the ground that the issue is fair trial—not whose fault is it that the defendant didn't have one. But, even if I were to adopt the fault-finding approach (which I do only to make this following point), there was no lack of diligence on the part of the defendant in this case. Soon after the setting of defendant's new trial, his appointed counsel moved to withdraw from the case. I am unable to place any blame on the defendant for the fact that this motion was not formally heard until the day of trial. Although the defendant was informally advised that the court would not allow his appointed counsel to withdraw, I find no evidence in the record to support the charge that the defendant was seeking to manipulate or subvert court procedures. *The fact remains that the defendant became his own attorney on the day of trial and, therefore, had no opportunity to adequately prepare his defense.*[2]

---

2. Even where certiorari has been denied by the United States Supreme Court, where lack of

time for a *lawyer* to prepare his client's defense has been urged, none of the recently denied

There had been no previous requests for a delay. Under these circumstances, the denial of a continuance amounted to a deprivation of the defendant's right to a fair trial. See, *People v. Williams,* 386 Mich. 565, 194 N.W.2d 337 (1972).

With regard to the evidence of a collateral offense, I must also differ with the majority's analysis. The majority concludes that the fact that the defendant may have stolen the gun used in the armed robbery was admissible to prove the defendant's identity. While I probably would not have found the introduction of such evidence prejudicial, I am unable to agree that it, in any way, assists in identifying the defendant. The manner in which the defendant allegedly obtained the gun is totally unrelated to question of identity.

petitions for certiorari involve situations in which an attorney had less than a day in which to prepare. See, e. g., *United States v. Riebold,* 557 F.2d 697 (10th Cir.) (one month), cert. denied, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *United States v. Rastelli,* 551 F.2d 902 (2d Cir.) (18 days), cert. denied, 434 U.S. 115, 98 S.Ct. 115, 54 L.Ed.2d 91 (1977); *United States v. Lustig,* 555 F.2d 737 (9th Cir. 1977) (4 days), cert. denied, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); *United States v. Brugger,* 549 F.2d (7th Cir.) (more than two weeks), cert. denied, 431 U.S. 919 (1977); *United States v. Faulkner,* 538 F.2d 724 (6th Cir.) (although attorney was retained immediately prior to trial he had more than two days before the first witness was called), cert. denied, 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976).